**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| PAC-VAN, INC. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:12-CV-341 |
| | § | |
| CHS, INC. D/B/A CHS COOPERATIVES | § | |

## Plaintiff Pac-Van, Inc.'s Motion for Summary Judgment

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Pac-Van, Inc. ("Plaintiff"), and makes and files this its Motion for Summary Judgment on its claims against Defendant, CHS, Inc. d/b/a CHS Cooperatives ("Defendant"), and in support thereof would respectfully show unto the Court as follows:

### I.

### INTRODUCTION

On May 28, 2010, non-party Charles Vastine filed Cause No. 10CV1500 styled *Charles Vastine v. Lee Strube; Tanya Koch; and Pac-Van, Inc.* in the 405th Judicial District Court of Galveston County, Texas against Pac-Van ("Vastine lawsuit") [Ex. 2]. Mr. Vastine's wife, Holly Vastine, later joined the lawsuit as a Plaintiff [Ex. 3]. Vastine, an employee of Defendant, alleged he suffered personal injuries when he fell through the floor in a work trailer leased to Plaintiff by Defendant. The lease between Plaintiff and Defendant was governed by the terms and conditions of the September 26, 2008 Master Lease Agreement and Rental Agreement ("MLA") between Plaintiff and Defendant. [Ex. 1.]

The Contract at issue required that Defendant, at its own expense and at all times, maintain the leased equipment in good and safe condition. [Exh. 1].  Further, Defendant assumed the entire risk of loss or damage to the leased equipment.  *Id*.

The insurance paragraph of the Contract provided as follows:

> INSURANCE: Lessee, at its own expense, shall insure for risks of loss or damage.  Lessee must carry commercial general liability insurance insuring both Lessor and Lessee against loss.  The general liability insurance amounts must not be less than $1,000,000 bodily injury per person, $1,000,000 bodily injury per occurrence, $1,000,000 property damage per occurrence, and Lessor must be named as an additional insured.  Lessee must carry fire, windstorm and extended coverage casualty insurance for the agreed upon value of the leased equipment and Lessor must be named as the loss payee.  Lessee shall provide Lessor with a Certificate of Insurance documenting compliance with the insurance requirements as stipulated in this Master Lease Agreement.  The Certificate must be received at the Lessor's Corporate Office, 2995 South Harding Street, Indianapolis, Indiana, 46225.  The required insurance policy shall be procured with a company having an AM Best rating of no less than A-VI.  Lessee shall require the insurance company providing the policy to endeavor to provide notice of any change at least 30 days prior to the effectiveness thereof.

As stated above, the Contract required that Defendant, at its own expense, carry commercial general liability insurance insuring both Lessor (Plaintiff) and Lessee (Defendant) against loss.  The Contract specifically required that "Lessee, at its expense, shall insure for risks of loss or damage." [Ex. 1]. The Contract also required that the insurance policy name Plaintiff as an additional insured and that it not be less than $1,000,000 bodily injury per person and $1,000,000 per occurrence.  In addition, Defendant was required to provide Plaintiff with a Certificate of Insurance documenting compliance with the insurance requirements as stipulated.  Plaintiff timely tendered to Defendant the underlying lawsuit and demanded a legal defense and coverage for Mr. Vastine's claims for damages.  Defendant declined to provide a defense or protection, regardless of the presence or absence of insurance coverage, for Plaintiff from the underlying lawsuit. [Ex 4].  Therefore, Plaintiff

was forced to defend itself, to incur a substantial sum of money in attorney's fees and expenses, and

to settle the underlying lawsuit for a reasonable amount to avoid the risk of trial.

Defendant breached its contract with Plaintiff and negligently failed to fulfill its insurance

obligations under the contract by not acquiring a commercial general liability policy or otherwise

insuring the losses to Plaintiff.

## II.

## Summary Judgment Evidence, Notice of Unfiled Discovery, Terms and Definitions

Plaintiff attaches the following exhibits to this Motion, and incorporates them herein as if

fully set forth at length.  These exhibits may contain unfiled discovery.

1. September 26, 2008 Master Lease Agreement and Rental Agreement
2. Plaintiff's Original Petition from Cause No. 10CV1500 styled *Charles Vastine v. Lee Strube; Tanya Koch; and Pac-Van, Inc.* in the 405th Judicial District Court of Galveston County
3. Plaintiff's Third Amended Petition from Cause No. 10CV1500 styled *Charles Vastine v. Lee Strube; Tanya Koch; and Pac-Van, Inc.* in the 405th Judicial District Court of Galveston County
4. October 5, 2009 Pac-Van, Inc.'s tender request to CHS, Inc. d/b/a CHS Cooperatives; April 15, 2010 and June 7, 2010 CHS, Inc. d/b/a CHS Cooperatives's response
5. Defendant's Answers to Interrogatories

## III.

## Standard of Review

Federal Rule of Civil Procedure 56 provides that a party against whom relief is sought may

move at any time, with or without proof negating the non-movant's claim(s). FRCP 56; see also

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986); *Wallace v. Texas Tech*

*Univ.*, 80 F3d 1042, 1046-47 (5th Cir. 1996).  Rule 56 must be construed with due regard not only

for the rights of persons asserting claims and defenses... to have those claims and defenses tried to

a jury, but also for the rights of persons opposing such claims and defenses to demonstrate...prior

to trial, that the claims and defenses have no factual basis. *Celotex* at 327, 2555.  The movant has

the burden to show the absence of a genuine issue of material fact.  *Adickes v. S.H. Kress & Co.*, 398

U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970).  However, the mere existence of some alleged factual

dispute between the parties' will not defeat summary judgment.  *Holcomb v. Powell*, 433 F.3d 889,

895 (D.C. Cir. 2006).

## IV.

## Arguments and Authorities

**A.**      ***Breach of Contract Claim***

To prevail on a breach of contract claim, Plaintiff must prove the following:

1.      There is a valid, enforceable contract;
2.      The plaintiff is a proper party to sue for breach of contract;
3.      The plaintiff performed, tendered performance of, or was excused from performing its contractual obligations;
4.      The Defendant breached the contract; and
5.      The Defendant's breach caused the Plaintiff's injury.

*Residential Dynamics, LLC, v. Loveless*, 186 S.W.3d 192, 198 (Tex. App.--Fort Worth 2006, no pet.); *Zuniga v. Wooster Ladder Co.*, 119 S.W. 3d 856, 862 (Tex. App. --San Antonio 2004, no pet.).

## B.  Contract and Legal Authorities

At issue in this case is whether Defendant – the Lessee – fulfilled its obligations to, ***at its own***

***expense***, ***carry general liability insurance that insured Lessor against and for risk of loss or***

***damage.***

According to Defendant, it obtained the Liberty Mutual Excess Commercial Liability Policy

EBI-641-004264-028 for the policy period September 1, 2008 to September 1, 2009, with per

- 4 -

occurrence limits of $1,000,000,00 for bodily injury and property damage, under which Plaintiff was covered as an additional insured.  [Ex. 5].   Defendant claims that this coverage satisfied the general liability requirements of the "Insurance" clause of the contract. Per Defendant, the contract did not specify that the liability insurance procured by Defendant be primary or non-contributing nor did the contract limit the self-insured retention or deductible the policy could contain.  The Defendant further contends that the contract did not require that Defendant be responsible for satisfying self-insured retention or deductible amounts.  Both Defendant and Plaintiff agree that Texas law does not infer a duty to obtain a specific type of general liability policy when the underlying contract is silent.  Defendant, however, would have this court ignore the plain language of the contract.   The Defendant cannot accept that part of a contract beneficial to it and deny the application of other provisions that may be detrimental or disadvantageous. *Trinity Universal Ins. Co. v. Bill Cox Const., Inc.,* 75 S.W.3d 6, 11 (Tex.App. —San Antonio 2001, no pet.); *Daniel v. Goesl*, 161 Tex. 490, 341 S.W.2d 892, 895 (1960) (one who accepts the benefit of a contract must also assume its burdens); *see also RGS, Cardox Recovery, Inc. v. Dorchester Enhanced Recovery*, *Co.*, 700 S.W.2d 635, 639 (Tex.App.--Corpus Christi 1985, writ ref'd n.r.e.) (holding that parties to joint venture had right to place whatever limitations upon themselves as they might agree to in their contract and that the provision might be burdensome or awkward is not a problem for the courts; appellants agreed to the provision and appellees have the right to rely on compliance with the provision as agreed to by the parties).

The very first sentence requires that Defendant "at its own expense, shall insure for risks of loss or damage."   The phrase "at its own expense" very clearly requires Defendant to insure the Plaintiff.  This includes paying the costs, either a deductible or self-insured retention, of procuring

- 5 -

a CGL policy of not less than $1,000,000 with a company having an AM Best rating of no less than A-VI.  If Defendant chose to ensure plaintiff with an excess policy starting at $1,000,000 and a self-insured retention of $1,000,000, that is Defendant's obligation it is--Defendant's "expense."

In support of its position, Defendant cites to *Gilbane Bldg. Co. v. Keystone Structural Concrete, Ltd.,* 263 S.W.3d 291, 300 (Tex. App.-Houston [1st Dist.) 2007, no pet.) ("We disagree that a requirement for Keystone to name Gilbane as an additional insured automatically means that any insurance coverage obtained by Keystone would be primary to insurance procured by Gilbane.").  The *Gilbane* case involved an employee of Keystone, Mr. Victor Nava, who sued Gilbane for personal injuries.  Keystone's primary carrier paid Gilbane's defense and paid the first million of the settlement.  The question in *Gilbane* was whether the excess coverage was primary to Gilbane's primary carrier's coverage.  *Gilbane* does not address whether Keystone's primary level should have kicked in – because it already had.  *Gilbane,* unlike the case at bar, did not involve a "fronting" policy under which Defendant was responsible for the SIR of $2 million dollars but has refused to abide by the contract to insure Plaintiff at Defendant's expense.

Defendant also supports its position with *Phillips Petroleum Co, v, St. Paul Fire & Marine Ins, Co*, 113 S,W.3d 37, 43-44 (Tex. App.-Houston [1st Dist.] 2003, pet, denied) ("Phillips's argument that the terms of the M.S.A. obligated Zachry to purchase a 'traditional' commercial general liability policy-one with an unlimited duty to defend until liability limits are exhausted by settlements or judgments-requires the insertion of terms into the policy which are not contained in the M.S.A. itself. This we may not do.").  This case is distinguishable from the facts of the case at bar as it was in the case of *Amtech v.CSFB 1998-P1 Buffalo Speedway Office Ltd.,* 248 S.W.3d 373, 375 (Tex. App. – Houston [1st Dist.] 2007, no pet.)*.*  In *Amtech,* Amtech argued that a summary

judgment granted against it was improper because Amtech complied with its contractual agreement to name CSFB as an additional insured on a CGL policy.  The service contract required Amtech to carry insurance. Specifically, the contract specified:

> B.      Notwithstanding any provision of the Service Contract to the contrary Contractor, at its sole cost and expense shall at all times during the term of the Contract, carry and maintain the following insurance coverage with insurance companies authorized to do business within the State of Texas.
>
> The limits of each policy shall be not less than $1,000,000 per occurrence for bodily injury, personal injury and property damage and shall name Manager and Owner as additional insured;...

The evidence in the case revealed that Amtech obtained a CGL policy which named CSFB as an additional insured.  However, CSFB asserted that Amtech breached the service contract because the CGL policy it obtained had a deductible equal to the amount of the policy limits, that is, a "fronting" policy.  *Amtech*, 248 S.W.3d *at 380;  See Phillips Petroleum Co. v. St. Paul Fire & Marine Ins. Co.*, 113 S.W.3d 37, 43-44 (Tex. App.--Houston [1st Dist.] 2003, pet. denied) (noting that policy is "fronting policy" when the amount of deductible payable by insured equaled the amount of liability limits).  Because the insurance policy has a deductible equal to the policy limits, CSFB argued that the insurance policy was illusory. Amtech argued that, in accordance with *Phillips Petroleum Company v. St. Paul Fire & Marine Insurance Company*, it complied with the service contract when it obtained insurance naming CSFB as an additional insured. 113 S.W.3d at 43-44.

The court, however distinguished *Phillips Petroleum* on its facts.  In *Phillips Petroleum*, Zachry, a contractor, was required to purchase insurance and to name Phillips as an additional insured. *Id.* at 40-44. The contract required Zachry to obtain "Commercial General Liability

Insurance on an occurrence form with a combined single limit of $1,000,000 per occurrence...." *Id.* at 41. Zachry purchased a fronting policy from St. Paul Insurance Company that provided several types of coverage and carried a liability limit for bodily injury of $1 million per event. *Id.* at 39. The policy required Zachry to pay a deductible equal to the limits of liability after St. Paul had paid on the policy. *Id.* The policy stated, "We will pay all or part of the deductible for you, unless we agree to do otherwise. WHEN WE DO MAKE PAYMENT, YOU [ZACHRY] AGREE TO REPAY THAT AMOUNT TO US PROMPTLY AFTER WE NOTIFY YOU OF THE PAYMENT." *Id.* at 42. An accident occurred and Zachry's employees brought suit against Phillips. *Id.* at 39. Phillips demanded that Zachry's insurer, St. Paul, provide Phillips with a defense. *Id.* St. Paul provided a defense subject to a reservation of its rights under the policy. *Id.* It expended $1 million in its defense of Phillips. *Id.* at 39 n.5. Phillips then sued St. Paul for breach of contract and sought a declaratory judgment that St. Paul owed Phillips an unlimited defense to the underlying lawsuits and indemnity up to the liability limits of the policy. *Id.* St. Paul moved for summary judgment and argued that St. Paul owed no further obligation to Phillips once St. Paul expended $1 million in defending Phillips in the underlying lawsuits. *Id.* The trial court granted summary judgment and Phillips appealed. *Id.* On appeal, Phillips argued that Zachry was contractually obligated by a plain reading of the terms of the contract to obtain "traditional" CGL coverage. *Id.* at 43. The Court disagreed with Phillips' arguments because the Zachry-Phillips contract d[id] not expressly specify the type of commercial general liability coverage that Zachry was required to purchase. Phillips's argument that the terms of the [contract] obligated Zachry to purchase a 'traditional' commercial general liability policy--one with an unlimited duty to defend until liability limits are exhausted by settlements or judgments--requires the insertion of terms into the policy which are not contained in the [contract]

- 8 -

itself. This the court declined to do. *Id.* at 43-44. In sum, because the Zachry-Phillips contract did not require Zachry to purchase a traditional policy, this Court refused to write such a requirement. *Id.* at 381.

Despite its holding in *Phillips Petroleum,* the court disagreed with Amtech that *Phillips* controlled the disposition of this issue in the *Amtech* case. Like the St. Paul fronting policy considered in *Phillips*, the Hartford Fire Insurance Company CGL policy that Amtech purchased to fulfill its contractual obligations to CSFB was a fronting policy that required Hartford to defend insureds against claims covered by the policy, to settle suits against them, and to pay on behalf of the insured the sums the insured was legally obligated to pay as damages.  Amtech, like Zachry, was obligated to reimburse Hartford "[U]pon notification of the action taken . . ., up to the amount of the applicable deductible set forth in the Deductible Endorsement for 100% of the limits that have been paid by us." In other words, the policy shifted the risk from the insurance company back to the Named Insured, Amtech. In *Phillips*, Zachry reimbursed St. Paul up to the limits of the policy after St. Paul provided the defense to Phillips. Therefore, it fulfilled its duty to insure Phillips, and nothing in the Zachry-Phillips contract required Zachry to do more.

By contrast, however, there was nothing in the record before the court in *Amtech* that would indicate that Hartford fulfilled its duty to provide a defense to CSFB up to policy limits or that Amtech was able and did repay Hartford up to the limits of the Hartford policy. Rather, the evidence indicated that **Amtech attempted to shift the burden of repayment to CSFB** as an additional named insured.

Therefore, in contrast to *Phillips*, the question was not whether Amtech's contract with CSFB required it to purchase a CGL policy that would provide an unlimited defense, as opposed to the $1

- 9 -

million defense it received, but whether Amtech complied with the express provisions in the service contract that required Amtech to obtain "[c]omprehensive liability insurance . . . adequate to protect the interest of the parties hereto."  In *Amtech,* no one disputed that CSFB was not provided insurance coverage up to policy limits.  Thus, the fronting policy was not adequate to protect the interests of CSFB.  The court held:

> Accordingly, we hold that by obtaining a fronting policy that did not provide coverage within the limits of the policy at no cost to CSFB, when the contract required a policy adequate to protect the interests of the parties, Amtech breached its contractual obligations. Thus, the trial court correctly granted summary judgment in favor of CSFB.

In the case at bar, the obligations of Defendant were similar to those of Amtech.  That is, like Amtech which was required to obtain comprehensive liability insurance "adequate to protect the interest of the parties hereto", Defendant was required to, ***at its own expense***, ***carry general liability insurance that insured Lessor against and for risk of loss or damage.***  **Like Amtech, Defendant has attempted to shift the risk of that insurance back to Plaintiff.**  Defendant's policy was a fronting policy and, unlike *Phillips Petroleum* and even *Amtech*, the policy was not based on a deductible but was based, instead, on a self-insured retention or SIR.   In fact, the Liberty Mutual Excess policy obtained by the Defendant explicitly stated:

**SECTION I - COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

 **1. Insuring Agreement**

> a. We will pay those sums in excess of the "self-insured amount" that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this ***excess insurance*** applies. ......

- 10 -

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

**4. Other Insurance.**

a. Insurance provided under this Coverage Pan, including all endorsements thereto is excess over the "self-insured amount".

b. The insured is responsible for all damages within the "self-insured amount". We shall not be required to assume this obligation or to pay damages within the "self-insured amount" for any reason, including but not limited to:

      (1) the inability or failure of the insured to pay for any reason, including insolvency or bankruptcy;

      (2) any failure of the insured or any agent or representative of the insured to accurately disclose to claimants the nature and limits of our obligations under this Coverage Pan.

Rather than insuring the risk of loss and damages up to $1m, Defendan's position would only insure the risk of loss after Plaintiff pays the first $2m.   Defendant did not:

- Provide insurance at its own expense;
- Insure Plaintiff for risk of loss of damage;
- Carry general liability insurance insuring Plaintiff;
- Provide insurance not less than $1,000,000.
- Name Plaintiff as an additional insured on a primary general liability policy;
- Provide a Certificate of Insurance to Plaintiff documenting compliance;
- Procure the required the general liability policy with a company having an AM Best rating of no less than A-VI.

There is no dispute as to the validity of the contract or that Plaintiff is a proper party.  As a matter of law, Plaintiff contends Defendant breached the contract and, as result, Plaintiff was required to defend itself in the underlying case and settle Mr. Vastine's claims without any contribution by Defendant.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Pac-Van, Inc., prays that this Motion for Summary Judgment, be in all things sustained and granted, and that Plaintiff have such other and further relief, both at law and in equity, to which they may show themselves justly entitled.

Respectfully submitted,

**BROTHERS ALVARADO, P.C.**

By:       */s/ Karen M. Alvarado*
          David E. Brothers
          State Bar No. 03084300
          Federal I.D. No. 8575
          Karen M. Alvarado
          State Bar No. 11067050
          Two Memorial City Plaza
          820 Gessner, Suite 1075
          Houston, Texas 77024
          (713) 337-0750
Fax:      (713) 337-0760

**Attorneys for Plaintiff, Pac-Van, Inc.**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was served upon the following counsel of record in compliance with Rule 5d of the Federal Rules of Civil Procedure on this the 23rd day of July, 2013.

**VIA FAX**
Ms. Catherine L. Hanna
Mr. Eric Peabody
HANNA & PLAUT, LLP
The Littlefield Building
106 East 6th Street, Suite 520
Austin, TX 78701

**BROTHERS ALVARADO, P.C.**

By:       */s/ Karen M. Alvarado*
          Karen M. Alvarado