IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| PAC-VAN, INC.,<br>Plaintiff | § § § § | |
| v. | § | CIVIL ACTION NO. 3:12-CV-00341 |
| CHS, INC. d/b/a CHS<br>COOPERATIVES,<br>Defendant | § § § § § | |

### DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

TO UNITED STATES DISTRICT JUDGE GREGG COSTA:

COMES NOW Defendant CHS Inc. d/b/a/ CHS Cooperatives ("CHS") and files its Cross-Motion for Summary Judgment and would respectfully show the Court as follows:

### I.
### INTRODUCTION

This suit for breach of contract/indemnity arises from an underlying personal liability action in which Charles Vastine, an employee of Defendant CHS, sued Plaintiff Pac-Van, Inc., for injuries sustained when he fell through the floor of a trailer owned by Pac-Van. Pac-Van had leased the trailer to CHS. Vastine received Longshore and Harbor Workers' Compensation Act ("LHWCA") benefits because the accident occurred in the scope of Vastine's employment with CHS. Pac-Van settled Vastine's suit and now seeks contribution/indemnity from CHS on theories of breach of contract and negligence. The primary bases of Pac-Van's complaint are that CHS: (1) failed to procure the type of insurance required by the lease agreement for the trailer; and (2) failed to maintain the trailer as required by the agreement.

CHS is entitled to summary judgment on each of Pac-Van's causes of action. First, CHS complied with its contractual duties to procure commercial general liability ("CGL") covering

Pac-Van as an additional insured. The lease agreement did not require that the policy provide primary coverage or specify a deductible; Texas law does not infer these terms from a general agreement to obtain insurance. Pac-Van's dissatisfaction with the insurance CHS procured is no evidence of breach of contract as a matter of law.

Pac-Van's claim for indemnity or contribution from CHS is also barred as a matter of law. Texas law does not recognize a common-law right of indemnity and the lease agreement does not require CHS to indemnify Pac-Van. To the extent Pac-Van seeks contribution, CHS is protected by the exclusive remedy provision of the LHWCA, which precludes derivative contribution actions by a tortfeasor against the allegedly negligent employer. In addition, Pac-Van could settle only its own liability to Vastine, not the joint liability that would entitle it to seek contribution. Therefore, CHS is entitled to summary judgment.

## II.
## SUMMARY JUDGMENT EVIDENCE

This Motion relies on the pleadings and exhibits on file in this action and the following exhibits, which are referenced and incorporated for all purposes:

Exhibit A: Affidavit of David Klima.

A-1: True and correct copy of Excess Commercial General Liability Policy EB1-641-004264-028, issued by Liberty Mutual Insurance Company to CHS, Inc., for the period September 1, 2008 to September 1, 2009.

A-2: Master Lease Agreement between Pac-Van, Inc. and CHS.[1]

## III.
## UNDISPUTED FACTS

CHS is engaged in a variety of the businesses, including the import and shipment of fertilizers to consumers. Ex. "A," Klima Aff. Charles Vastine was in the scope and course of his

---

[1] Pac-Van attached a copy of the Master Lease Agreement to its state court petition in this suit. CHS has attached a more legible copy to this motion.

employment with CHS on May 28, 2009, when he fell through a soft spot in the floor of a trailer that was being used as a temporary office building at CHS's Galveston location. *Id.*; Plaintiff's Original Petition ¶ IV. Vastine injured himself in the fall and received LHWCA compensation and medical benefits for his injury from CHS's LHWCA/Workers' Compensation insurance carrier, Liberty Mutual. Ex. "A," Klima Aff.

CHS leased the trailer in which Vastine was injured from Pac-Van. *Id.*; Plaintiff's Original Petition ¶ IV. The Master Lease Agreement ("MLA") contains the following pertinent provisions:

> LOSS AND DAMAGE: All personal property placed or moved in the leased equipment shall be at the risk of the Lessee or owner thereof. Lessor shall not be liable for any damage to said personal property, or the Lessee, or any other person arising from any cause whatsoever, including any act of negligence of any co-tenant or occupants of the leased equipment, or damage caused by an act of God (such as tornado, hurricane, lightning, earthquake, hail, wind, rain, or snow), unless such damage is caused by the negligence or willful conduct of Lessor. Lessee also assumes and shall bear the entire risk of loss of or damage to the leased equipment or any part of the leased equipment from any cause whatsoever (except ordinary wear and tear) including vandalism from commencement of Rental Agreement to termination or expiration of the Rental Agreement, except to the extent that such loss or damage is caused by the negligence or willful conduct of Lessor. * * *
>
> INSURANCE: Lessee, at its own expense, shall insure for risks of loss or damage. Lessee must carry commercial general liability insurance insuring both Lessor and Lessee against loss. The general liability insurance amounts must not be less than $1,000,000 bodily injury per person, $1,000,000 bodily injury per occurrence, $1,000,000 property damage per occurrence, and Lessor must be named as an additional insured. Lessee must carry fire, windstorm and extended coverage casualty insurance for the agreed upon value of the leased equipment and Lessor must be named as the loss payee. Lessee shall provide Lessor with a Certificate of Insurance documenting compliance with the insurance requirements as stipulated in this Master Lease Agreement. The Certificate must be received at the Lessor's Corporate Office, 2995 South Harding Street, Indianapolis, Indiana 46225. The required insurance policy shall be procured with a company having an AM Best rating of no less that A-VI. Lessee shall require the insurance company providing the policy to endeavor to provide notice of any change at least 30 days prior to the effectiveness thereof.

Ex. "A-2," MLA.

Pursuant to the lease agreement, CHS obtained a policy of commercial general liability ("CGL") insurance from Liberty Mutual. Ex. "A-1." The Liberty Mutual policy has a per-occurrence limit of $1 million and contains an additional insured endorsement that provides in pertinent part:

> SECTION II-WHO IS AN INSURED is amended to include as an insured any person or organization for whom you have agreed in writing to provide liability insurance. But:
>
> The insurance provided by this amendment:
>
> 1. Applies only to "bodily injury" or "property damage" arising out of (a) "your work" or (b) premises or other property owned by or rented to you.
>
> * * *
>
> The following provisions also apply:
>
> 1. *Regardless of any provision of any written agreement, policy of insurance, or endorsement, insurance provided to the Additional Insured is excess over the "self-insured amount."*
>
> * * *
>
> 3. Where the applicable written agreement does not specify on what basis the liability insurance will apply, this insurance is primary (subject to the "self-insured amount"), and we will share liability in excess of the "self-insured amount" with any other valid and collectible primary insurance available to the Additional Insured.
>
> 4. *We shall have no duty to defend the Additional Insured.*
>
> 5. Items 4.c. and d. of the Other Insurance of Section IV will not apply to the Additional Insured.[2]

---

[2] Section 4.c. of the "Other Insurance" condition prohibits an insured from contracting to cover the "self-insured amount" with other insurance without Liberty's prior approval. 4.d. provides that any "other insurance" available to the insured which is applicable to the damages within the "self-insured amount" and not prohibited by 4.c. shall be deemed to satisfy the insured's responsibility for the SIR to the extent the other insurance actually pays those amounts. 4.d. further states that Liberty's policy will not contribute with any other such insurance.

*Id.* (emphasis added). The self-insured retention ("SIR") of the Liberty Mutual Policy is $2 million per occurrence. *Id.*

Vastine sued Pac-Van for negligence in a suit styled Cause No. 10CV1500; *Charles Vastine v. Lee Strube, Tanya Koch, and Pac-Van, Inc.*, In the 405th Judicial District Court, Galveston County, Texas. Pac-Van and its CGL carrier, The Hanover Insurance Company, tendered Pac-Van's defense to CHS and Liberty Mutual. Plaintiff's Original Petition ¶ IV & Ex. 4. Because the Liberty Mutual CGL policy required the insured to satisfy the SIR before the per-occurrence limits became available, CHS and Liberty Mutual denied Pac-Van's tender. *Id.* Ex. 4. Pac-Van subsequently settled Vastine's claims for $172,500.00 and filed this suit.[3] *Id.* ¶ VII.

## IV.
## SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56 requires the Court to grant summary judgment if the evidence shows there is "no genuine issue as to any material fact." FED. R. CIV. P. 56(c). A defendant moving for summary judgment must only present evidence disproving "the existence of any essential element of the opposing party's claim." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Once the movant has made this showing, the plaintiff must produce specific evidence showing "that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Disputes over irrelevant, immaterial or unnecessary facts will not render summary judgment inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

---

[3] Pac-Van filed suit in the 212th Judicial District Court of Galveston County. CHS removed based on diversity jurisdiction. [Doc. 1] As noted in Pac-Van's Original Petition, the real-party-in-interest is The Hanover Insurance Company, Pac-Van's CGL carrier. *See* Plaintiff's Original Petition ¶ VIII.

## V.
## ARGUMENT AND AUTHORITIES

### A.   CHS Complied With Its Contractual Obligation To Obtain Insurance And Name Pac-Van As An Additional Insured.

CHS did not breach its agreement to procure CGL coverage by obtaining an excess CGL policy with a large SIR that does not provide for defense. Texas courts do not impose a duty on contracting parties to obtain a particular type of CGL policy unless the parties specify the desired policy, terms, and coverage limits in their contract. *Phillips Petroleum Co. v. St. Paul Fire & Marine Ins. Co.*, 113 S.W.3d 37 (Tex. App.–Houston [1st Dist.] 2003, pet. denied). *Phillips* is squarely on point. In *Phillips*, the contractor, Zachry, agreed in a Master Services Agreement ("MSA") to obtain CGL coverage and name the site owner, Phillips, as an additional insured. *Id.* at 40-44. Zachry secured a "fronting policy" with eroding limits, which required Zachry to repay the costs of defense and indemnity fronted by the insurer, St. Paul. *Id.* at 39. After the limits of the policy were exhausted, Phillips sought a declaration that the St. Paul policy should provide unlimited defense cost coverage because parties would typically expect defense costs to be included in a standard CGL policy. Rejecting this argument, the court held:

> [O]ther than the limits of coverage required, the M.S.A. does not expressly specify the type of commercial general liability coverage that Zachry was required to purchase. Phillips's argument that the terms of the M.S.A. obligated Zachry to purchase a "traditional" commercial general liability policy–one with an unlimited duty to defend until liability limits are exhausted by settlements or judgments–requires the insertion of terms into the policy which are not contained in the M.S.A. itself. This we may not do.

*Id.* at 43-44.

*Phillips* recognizes that the burden is on the party seeking to enforce an insurance procurement clause to prove that the type of CGL policy or coverage required was specified in the contract. *Id.* at 44 ("a contract, to be legally binding, must be sufficiently definite in its terms

so that a court can understand the parties' obligations") (citing *T.O. Stanley Boot Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex. 1992)); *cf. Utica Nat'l Ins. Co. v. American Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (party seeking coverage under insurance policy bears the burden to prove coverage); *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998) (party seeking to recover under a contract bears the burden of proving that conditions precedent have been satisfied). Similarly, Texas courts have refused to reform a contract to make insurance coverage primary when the parties failed to specify or contemplate the priority of coverage. *Gilbane Bldg. Co. v. Keystone Structural Concrete, Ltd.*, 263 S.W.3d 291, 302 (Tex. App.–Houston [1st Dist.] 2007, no pet.). As the *Gilbane* court held:

> Gilbane cites no authority for the proposition that being named as an additional insured means that the insurance policy will be primary to all other insurance. . . . We disagree that a requirement for Keystone to name Gilbane as an additional insured automatically means that any insurance coverage obtained by Keystone would be primary to insurance procured by Gilbane.

*Id.* at 300.[4]

Finally, Liberty's policy provides that "the insured" is responsible for satisfying the SIR before Liberty's excess coverage is triggered. *See* Liberty's Policy, Excess Commercial Liability Form, Section VI-Defense, Settlement and Investigation of Claims and Suits. The policy's "Separation of Insureds" clause means that "*the* insured" must be read as the insured seeking coverage – Pac-Van. *See id.*, Section IV-Conditions 7; *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 191 (Tex. 2002); *Bituminous Cas. Corp. v. Maxey*, 110 S.W.3d 203, 214 (Tex. App.–Houston [1st Dist.] 2003, pet. denied). CHS is not responsible for satisfying any portion of this SIR on Pac-Van's behalf absent a contractual obligation that it do so:

---

[4] In contrast, when the parties to an insurance procurement agreement specify the terms of coverage, those terms are enforceable against the promisor. *See In re Elevating Boats LLC*, 286 Fed. Appx. 118, 123-24 (5th Cir. 2008) (because boat owner agreed to name charterer as additional insured and agreed to be solely responsible for deductibles under policy, charterer was entitled to recover deductible paid under its own policy from boat owner).

> The CGL Policy is silent as to how claims within the deductible are to be allocated between or among named insureds and additional insureds. The CGL Policy does not provide that all deductibles shall be the sole obligation of [the named insured]. Under the unambiguous language of the CGL Policy, we conclude it imposes no contractual obligation on [the named insured] to reimburse [the additional insured] for claims within the deductible amount.

*Helmerich & Payne Intern. Drilling Co. v. Swift Energy Co.*, 180 S.W.3d 635, 641-42 (Tex. App.–Houston [14th Dist.] 2005, no pet.). Thus, even if Pac-Van was entitled to satisfy its deductible obligation through its CGL policy with Hanover, neither the MLA nor Liberty's policy obligated CHS to reimburse Pac-Van or its subrogee Hanover for any portion of that deductible.

*Phillips*, *Gilbane*, and *Helmrich* hold that a court will not infer specific terms regarding the insurance to be obtained absent an indication of the contracting parties' intent. To the extent any ambiguity exists in the terms of the insurance procurement clause, that ambiguity must also be construed against Pac-Van as the drafter of the MLA. *See National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991); *Assicurazioni Generali, S.p.A. v. Ranger Ins. Co.*, 64 F.3d 979, 983 (5th Cir. 1995). Because the MLA is completely silent on the terms or type of CGL coverage to be obtained (other than limits) and on any duty of CHS to defend or hold Pac-Van harmless for costs or expenses resulting from the defense of a suit or claim, CHS did not breach the MLA by obtaining an "excess" CGL policy that does not provide defense.

**B.    The Contract Does Not Require CHS to Indemnify Pac-Van.**

To the extent Pac-Van asserts a contractual right to indemnity, that claim is unsupported.[5] The "Loss and Damage" clause of the MLA is not an indemnity agreement because it does not

---

[5] Pac-Van has not specifically asserted breach of a contractual indemnity agreement. However, Pac-Van implies that such an agreement exists in its Petition: "Defendant declined to provide a defense or protection, regardless of the presence or absence of insurance coverage, to Plaintiff from the underlying suit." Plaintiff's Original Petition ¶ IV. CHS therefore addresses this implied assertion of a contractual indemnity obligation.

require CHS to indemnify or hold Pac Van harmless for loss. Instead, the clause merely states that Pac-Van will not be liable for certain losses. A disclaimer of liability is not the same as an agreement to indemnify.

Even if the clause could be construed as an agreement to indemnify, it would not satisfy the express negligence rule that governs the validity of agreements to indemnify an indemnitee for its own negligence. *See Fisk Elec. Co. v. Constructors & Associates, Inc.*, 888 S.W.2d 813, 815 (Tex. 1994). Because the "Loss and Damage" clause excepts Pac-Van's own negligence, the effect is exactly the opposite of an "express negligence" indemnity agreement. Accordingly, the "Loss and Damage" clause does not provide a basis for Pac Van's tender or demand for defense and indemnity in the suit brought by Vastine.

### C. The Exclusive Remedy Provisions Of The LHWCA Bar Pac-Van's Cause Of Action For Negligence.

Pac-Van's claims for negligence and breach of contract related to maintenance of the trailer are also barred as a matter of law. As discussed *supra*, the MLA does not require that CHS indemnify Pac-Van for its own or even CHS's negligence. Texas has also abolished the common-law doctrine of indemnity. *B & B Auto Supply, Sand Pit, & Trucking Co. v. Cent. Freight Lines, Inc.*, 603 S.W.2d 814, 817 (Tex. 1980). Without a contractual basis for indemnity, Pac-Van's claims are for contribution based on the alleged comparative negligence responsibility of Pac-Van and CHS. *See id.* at 816-17.[6]

Pac-Van's contribution claim fails for at least two reasons. First, the LHWCA, like the Texas Workers' Compensation Act, provides the exclusive remedy for non-seaman workers

---

[6] A breach of contract claim is not a basis for contribution under chapter 33 of the Texas Civil Practice and Remedies Code. *CBI NA-CON, Inc. v. UOP Inc.*, 961 S.W.2d 336, 341 (Tex. App.–Houston [1st Dist.] 1997, pet. denied). Therefore, Pac-Van's contribution claims must be based on CHS's alleged negligence in maintaining the trailer.

against their employers. *See* 33 U.S.C.§ 905; *Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 89, 112 S. Ct. 486, 492, 116 L. Ed. 2d 405 (1991); *Chandris, Inc. v. Latsis*, 515 U.S. 347, 355–56, 115 S.Ct. 2172, 2183 (1995) ("As the Court has stated on several occasions, the Jones Act and the LHWCA are mutually exclusive compensation regimes."). Vastine was not a seaman. The exclusive-remedy provision of the LHWCA precludes derivative contribution actions by a tortfeasor against the allegedly negligent employer. *Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 112, 94 S. Ct. 2174, 2178, 40 L. Ed. 2d 694 (1974); *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.*, 342 U.S. 282, 286, 72 S. Ct. 277, 280, 96 L. Ed. 318 (1952); *see also Enserch v. Parker*, 794 S.W.2d 2, 7 (Tex. 1990) (discussing provision of Texas Workers' Compensation Act that "prohibits indemnity in a workers' compensation context unless one party expressly agrees to indemnify the other in writing"); *Gilbane*, 263 S.W.3d at 303. Because CHS could not be liable to Vastine for negligence, CHS has no liability to Pac-Van in contribution based on its alleged negligence.

### D. Pac-Van Cannot Seek Contribution For Its Settlement.

Furthermore, Pac-Van could settle only its own liability to Vastine, not the joint liability that would entitle it to seek contribution. *See Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 22 (Tex. 1987) ("We hold that a defendant can settle only his proportionate share of a common liability and cannot preserve contribution rights under either the common law or the comparative negligence statute by attempting to settle the plaintiff's entire claim."). Without a contractual right to indemnity or contribution, Pac-Van has no common-law basis to seek contribution from CHS for the settlement with Vastine. *See Gilbane*, 263 S.W.3d at 298 ("To allow Gilbane to litigate the question of who caused Nava's injuries post-settlement and without a valid indemnity agreement 'retards rather than advances the policy of preventing satellite litigation regarding

interpretation of indemnity contracts.'") (quoting *Fisk Electric Co. v. Constructors & Associates,* 888 S.W.2d 813, 815 (Tex.1994)).

## VI.
## CONCLUSION

With no actionable right to contribution from CHS for its settlement with Vastine, Pac-Van's claims against CHS must rise or fall based on CHS's alleged breach of contract to procure insurance. Because CHS procured a general liability policy with limits of $1 million per occurrence, CHS did not breach its contract with Pac-Van and is entitled to judgment as a matter of law.

WHEREFORE, PREMISES CONSIDERED, Defendant CHS respectfully prays that upon final hearing hereof, the Court grant its Motion for Summary Judgment as to all of Plaintiff's claims, render judgment that Plaintiff take nothing, and grant CHS such other and further relief to which it may be justly entitled.

Respectfully submitted,

HANNA & PLAUT, L.L.P.
211 East Seventh Street, Suite 600
Austin, Texas 78701
Telephone: 512.472.7700
Facsimile: 512.472.0205

By: */s/ Catherine L. Hanna*
    Catherine L. Hanna
    State Bar No. 08918280
    Southern District ID: 13577
    Attorney-in-Charge
    Eric S. Peabody
    State Bar No. 00789539
    Southern District ID: 28229

**ATTORNEYS FOR DEFENDANT
CHS INC. d/b/a CHS COOPERATIVES**

## CERTIFICATE OF SERVICE

    I hereby certify that on August 12, 2013, a true and correct copy of this document was filed via the Court's ECF system pursuant to LR5.1. The notice of electronic filing generated by the ECT system constitutes service of the document on counsel who are registered users of the system. Any other counsel of record will be served pursuant to FRCP 5(b) on this same date.

                                                                                                  */s/ Catherine L. Hanna*  
                                                                                                  Catherine L. Hanna